Thank you, your honors. May it please the court, my name is Randall Forbes and I represent the the appellant who was a social security disability claimant before or but not before below and this is actually only a disability insurance benefits case, not an SSI case. Many issues, I just want to emphasize a couple. One is I've been arguing before this court in this case and a few others that the Seventh Circuit should adopt some type of work history analysis such as the other courts are doing and it's important because if a claimant has a long work history, a work history of hard physical work, that ought to count for something, especially if the ALJ is denying disability in part because of credibility issues. Someone who has a demonstrated desire to work and has proven that desire, the ALJ ought to at least address it and explain why that shouldn't be a silent part and we shouldn't just assume that the ALJ is thinking about it or considering it. And several things go into this equation. One is the length of the work history, the difficulty of it, the arduousness of it, and also whether someone has experienced injury or impairments in the past that may have interrupted work for a short period of time and then they came back to work, also demonstrating a consistent desire. In this case also my client started her work career with... Is there any particular basis in the statute for the argument you're now making? In the sense that it impacts credibility and the case law and the statutes are infused. All right, I take it the answer is no, there isn't any particular basis in the statute. No, particular not necessarily. However, case law has dealt with many issues in relation to credibility that aren't specifically in the statute. Did any doctors opine that the plaintiff is unable to do light work? I don't think they specifically opined that. I think some of them addressed limitations for specific bodily functions. Right, but did the terms of any doctor's opinion, if accepted, preclude light work within the confines found by the ALJ? I do not know for sure on that. That would seem fairly central. Yeah, oftentimes physicians don't use terms of light or sedentary. No, I know that and we know it's not their call ultimately. Right. But it is usually helpful to a claimant if a doctor, at least, has perceived a need for limitations that would effectively preclude all work. I do agree with you on that, Your Honor. Thank you. The other thing about her work history is that she started out well behind because her cognitive limitations were quite low. And that also shows desire, that shows that despite the cognitive inability, she wanted to work. She watched, tried to learn, and worked. I'm going to step forward to the obesity analysis. The case law and the regulations specify that a certain analysis needs to be done. And here, obesity is mentioned as a severe cause that impacts work activities. She then, the ALJ then, evaluated it under step 3 and suggested it didn't meet a listing. But there's no evaluation really anywhere else and there's no specification as to which work activities obesity impacts. And because of the lack of discussion, it can't be meaningfully reviewed. Obesity can impact a number of things and we cannot determine any logical basis for the selection of light work versus sedentary versus sit-stand versus no work without a discussion somewhere. I mean, I can make the ALJ's argument. It's not my job to make the ALJ's argument. It's the ALJ's job. How specific, Mr. Forbes, would you have the ALJ make with regard to obesity? Well, in a case involving knees, I want a discussion whether or not sitting at the flex. And that would help determine whether the obesity affects that kind of pain, back pain that aggravates it. In this particular case, back and neck issues were in play. There should be a discussion somewhere about how that impacts those impairments. We should be able to tell by reading the decision how obesity impacts other impairments or how it leads to the selection of one exertional level over another. Can't tell that here. And it's, okay, one last thing, then I'll step down until rebuttal, is the overemphasis of daily activities as a way of discrediting this particular claimant is, I believe that this law. Claimant had to take breaks. Claimant was essentially restricted to using one arm for a lot of her daily activities. In this case, daily activities should not have been used to diminish credibility. Probably should have been used to enhance credibility, the fact that she was trying to do anything at all. The fact that she was trying to do things is also consistent with her long work history and her coming back from impairments and working also. So thank Good morning, your honors. May it please the court, my name is Meredith Schacht and I represent the Acting Commissioner of Social Security in this case. As you're probably aware from the record and the briefs, Ms. Shoemaker was injured in a motorcycle accident in 2008. She was not disabled by that accident, however, and the ALJ's decision to that effect was supported by substantial evidence. The ALJ reviewed the medical evidence, she reviewed the medical opinions. Specifically, she reviewed the opinion of Ms. Shoemaker's treating orthopedist, who when he discharged her from his treatment indicated that Ms. Shoemaker had a 5% impairment in her right arm and he had earlier indicated that she could go back to work, but he recommended that she not pursue a job that required vigorous overhead lifting. The other opinions, medical opinions in the record, also recognize some limitations with Ms. Shoemaker's right arm, but they also do not preclude work. As Judge Hamilton asked, there are no opinions which preclude light work in this record. Additionally, the ALJ sufficiently and appropriately addressed Ms. Shoemaker's credibility. She listed several reasons for her credibility determination and her determination that Ms. Shoemaker's allegations were not credible. Specifically, she discussed the medical records, the medical opinions. She noted that Ms. Shoemaker had not received any recent treatment, had no ongoing treatment for her shoulder. She noted Ms. Shoemaker's regular activities. She noted that those activities included gardening, that she had regular daily activities. The ALJ also noted that Ms. Shoemaker's appearance and demeanor at hearing did not support the credibility of her allegations. Unless the court has any questions, we will ask that the court affirm the ALJ's decision for the reasons I just stated and the government didn't leave me a lot to rebut. However, bringing up the demeanor issue, that's another example of how this record cannot be meaningfully reviewed. I It may be an attitude, a particular attitude. It might be the way she was sitting in the chair. Maybe she was sitting upright and firm and using her exaggerated pain, maybe bifacial expressions. Who knows? The ALJ has got to make findings and put together a record that can be meaningfully reviewed and just saying the word does not get it. It gets back to one of the main points in the brief and that is even if she said I reviewed the work history, that would not be enough. And we can't imply that they've taken into account the work history. They need to state reasons so that you can be confident, your honors, that they've done the proper analysis. That's not been done here. Thank you. Thank you, Ms. Forbes. Thanks to both counsel. The case is taken under advisement.